<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JACQUELINE VEVERKA** <br><br>         Plaintiff, <br><br> v. <br><br> **ROYAL CARIBBEAN CRUISES LTD** <br><br>         Defendants. | Civ. No.  12-cv-03070 (ES) <br><br> **O P I N I O N** |

*Appearances by:*

CRESCI & BLACK LLC
Peter J. Cresci, Esq.
P.O. BOX 74
BAYONNE, NJ 07002

   *Attorney for Plaintiff,*

MEDINA LAW FIRM LLC
Eric Steven Medina, Esq.
The Chrysler Building
405 Lexington Avenue, 7th Fl.
New York, NY 10174

   *Attorney for Defendant.*

**<u>DEBEVOISE, Senior District Judge</u>**

   Plaintiff Jacqueline Veverka is an eighty-one year old senior citizen who suffered a slip and fall on Defendant's cruise ship, which resulted in emergency hip replacement surgery in New Jersey and consequential medical treatments, the cumulative effect of which results in ongoing pain, discomfort, and need for assistance with basic daily activities.

Defendant, Royal Caribbean Cruises LTD., has filed the instant motion to dismiss and motion to transfer venue to the United States District Court of the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1404(a) and Rule 12(b)(6), as per a forum-selection clause on the cruise Ticket Contract.  For the reasons stated below, Defendant's motions are DENIED.

## I. BACKGROUND

Ms. Veverka's complaint alleges the following facts, which are taken as true in the following discussion, solely for the purpose of evaluating the motions currently before the Court.

*1. Factual Allegations*

Ms. Veverka is an eighty-one year old senior citizen who suffered a slip and fall on Defendant's cruise ship, which departed from the cruise port of Bayonne, New Jersey on May 22, 2010 for a five night sail to Bermuda.  (Am. Compl. ¶ 5.)  On the afternoon of May 23, 2010, Ms. Veverka slipped on liquid left by the Defendant's employees on the ship's deck outside of Bermuda.  (Id. at ¶ 6.)

As a result of the fall, Ms. Veverka slept overnight in the medical unit of the cruise ship. (Id. at ¶ 8.)  When the ship docked in Bermuda the next day, Ms. Veverka was taken by ambulance to King Edward Hospital, where she was diagnosed with a broken hip.  She was then informed that a hip replacement was necessary. (Id. at ¶ 9.)  Ms. Veverka was flown by a medical evacuation plane to Teterboro Airport, New Jersey where an ambulance took her to Overlook Hospital in Summit, New Jersey.  She was admitted to Overlook Hospital that evening. (Id. at ¶ 10.)

Ms. Veverka had hip replacement surgery on May 26, 2010. (Am. Compl. ¶ 11.)  She was then transferred to Kessler Institute for Rehabilitation, West Orange, New Jersey on May 29,

where she underwent physical therapy twice a day until she was discharged on June 6, 2010. (Id. at ¶ 12.)

Following discharge, as a direct result of the injury she sustained by the slip and fall, Ms. Veverka developed a blood clot. (Id. at ¶ 13.) She was forced to undergo stomach injections for several weeks in order to relieve the blood clot and remained on medication for approximately six months. (Id. at ¶ 14.) The stress and pain associated with the slip and fall and subsequent blood clot later caused Ms. Veverka to seek treatment at Overlook Hospital on June 12, 2010 for chest pains. (Id. at ¶ 15.) Ms. Veverka continued outpatient rehabilitation for several months. (Am. Compl. ¶ 16.)

Ms. Veverka continues to experience pain and discomfort, arthritic condition, swelling and other long-term conditions. Additionally, she must rely on others for assistance with basic life activities such as driving and performing household chores. Ms. Veverka pleads that she has suffered loss of enjoyment of life, stress, anxiety, and other damages subject to proof. (Id. at ¶ 17.) A note from Ms. Veverka's physician, Dr. Michael Guma, indicates that she has rheumatoid arthritis and osteoarthritis, and that "she should not travel outside of New Jersey at this time." (Cresci Aff., Ex. B.)

2. *The Forum Selection Clause*

Ms. Veverka booked her cruise on Defendant's cruise ship on March 27, 2010. (Banciella Aff. ¶ 3.) Thereafter, Defendant's records indicate that Ms. Veverka was sent a Ticket Contract which is routinely mailed to each cruise guest. (Id.) According to Defendant, prior to embarking the vessel, each passenger is required to sign the portion of her Ticket

3

Acknowledgement Card in the space provided, and hand the signed document to the embarkation staff prior to boarding.  (Id. at ¶ 8.)[1]

The Ticket Contract contains clauses in bold capital letters on the first page alerting passengers to pay particular attention to sections 3 and sections 9 through 11 of the Ticket Contract.[2]  That language explicitly includes a forum-selection clause limiting jurisdiction to the

---

[1] As Ms. Veverka notes, proof of her signed ticket has yet to be produced.

[2] Specifically, the Ticket Contract provides on its cover page, in bold font and all capital letters:

> YOUR CRUISE/CRUISETOUR TICKET CONTRACT
> CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS
> OF PASSENGERS.  IT IS IMPORTANT THAT YOU
> CAREFULLY READ ALL TERMS OF THIS CONTRACT,
> PAYING PARTICULAR ATTENTION TO SECTION 3 AND
> SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY
> AND YOUR RIGHT TO SUE, AND RETAIN IT FOR THE
> FUTURE.

(Banciella Aff., Ex. A.)

Section 9(a) of the Ticket Contract contains the forum selection clause, and states in all capital letters:

> EXCEPT AS PROVIDED IN SECTION 10(b) WITH REGARD
> TO CLAIMS SUBJECT TO BINDING ARBITRATION, IT IS
> AGREED BY AND BETWEEN PASSENGER AND CARRIER
> THAT ALL DISPUTES AND MATTERS WHATSOEVER
> ARISING UNDER, IN CONNECTION WITH OR INCIDENT
> TO THIS AGREEMENT, PASSENGER'S CRUISE,
> CRUISETOUR, RCT LAND TOUR OR TRANSPORT, SHALL
> BE LITIGATED, IF AT ALL, IN AND BEFORE THE UNITED
> STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT
> OF FLORIDA LOCATED IN MIAMI-DADE COUNTY,
> FLORIDA, U.S.A., (OR AS TO THOSE LAWSUITS TO WHICH
> THE FEDERAL COURTS OF THE UNITED STATES LACK
> SUBJECT MATER JURISDICTION, BEFORE A COURT

United States District Court for the Southern District of Florida located in Miami-Dade County. The Ticket Contract is also available on Defendant's website. (Id. at ¶ 7.)

3. *Procedural Background*

The original Complaint in this matter was filed in this Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332, on May 22, 2012, and raised claims of negligence and breach of contract. (ECF Doc. No. 1.) On June 28, 2012, Ms. Veverka filed the operative Amended

---

> LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A.) TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGERS HEREBY CONSENTS TO JURISDICTION AND WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN THE APPLICABLE COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA.

(Id.)

Additionally, the second paragraph of Section 1 of the Ticket Contract provides:

> Purchase or use of this Ticket Contract, whether or not signed by the Passenger, shall constitute the agreement by Passenger, on behalf of himself and all other persons traveling under this Ticket Contract (including any accompanying minors or other persons for whom the Ticket Contract was purchased), to be bound by the terms and conditions of this Ticket Contract. This Ticket Contract cannot be modified except in a writing signed by a corporate officer of Operator. In addition, Guest acknowledges the availability of and Guest agrees to abide by the terms and conditions, including but not limited to certain payment terms such as minimum deposit requirements and payment due dates, which appear in the applicable Carrier brochure or online at www.RoyalCaribbean.com. In the event of any conflict between such other brochure or website materials and this Ticket Contract, the terms of this Ticket Contract shall prevail.

(Id.)

Complaint, which again raised claims for negligence and breach of contract (counts one and two), and added claims for violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1(D) (count three); breach of good faith and fair dealing (count four); and tortuous interference with her contractual relationship with Medicare, for reimbursement for medical expenses incurred pursuant to the Medicare, Medicaid, and SCHIP Extension Act (MMSEA) of 2007 (count five). (ECF Doc. No. 5.)

Shortly thereafter, on July 3, 2012, Defendant filed the instant motions to dismiss and to transfer venue. (ECF Doc. No. 6.) The opposition brief and reply brief were filed thereafter. On October 25, 2012 the motions were referred from Judge Salas to Judge Debevoise. The motion is decided on the papers.

## II.     DISCUSSION

The Court is presented with both a motion to dismiss pursuant to Rule 12(b)(6) and a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). In the Third Circuit, the procedure for enforcing a forum selection clause is to either bring a motion to transfer or a motion to dismiss so that suit may be filed in another federal forum. Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 297-98 (3d Cir. 2001). The Third Circuit Court of Appeals instructs that "the existence or non-existence of a § 1404(a) motion is not pertinent to deciding the proper scope of a 12(b) (6) motion." Id. at 299. Thus, a district court may examine a forum-selection clause using the standard applicable to a motion to dismiss, with consideration of the Section 1404 factors to dismiss under Rule 12. Id.[3]

---

[3]   The Third Circuit Court of Appeals further provides:

> We acknowledge that, as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal

In consideration of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Supreme Court informs us that "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Aschcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Furthermore, in assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Twombly, 550 U.S. at 555. Thus, the Twombly Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted). Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in

---

> venue, to transfer rather than dismiss. And if a defendant moves under § 1404(a), transfer, of course, is the proper vehicle (assuming the reasonableness of the forum selection clause). But when a defendant moves under Rule 12, a district court retains the judicial power to dismiss notwithstanding its consideration of § 1404."

Id.

the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. 678. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.

Defendant's request that this case be transferred to the Florida is governed by 28 U.S.C. § 1404(a), which states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In assessing a request for transfer pursuant to that statute, "courts have not limited their consideration to the three factors enumerated in § 1404(a) (convenience of the parties, convenience of witnesses, or interests of justice)." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Rather, a court deciding whether to transfer venue must "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Id. (quotations omitted). "The burden of establishing the need for transfer still rests with the movant." Id., citing 1A PT.2 MOORE'S P 0.345[5].

The factors to be considered fall into two broad categories: private interests and public interests. Among the former are (1) the plaintiff's forum preference, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties indicated by their relative physical and financial condition, (5) the convenience of witnesses, and (6) the location of books and records relevant to the dispute. Id. The last two factors are not relevant unless the witnesses and/or records would be unavailable at trial in one of the two fora. Id.

The public interests to be considered include (1) practical concerns that could reduce the time and expense necessary to resolve the claims at issue, (2) the relative administrative

difficulty in the two fora resulting from court congestion, (3) the local interest in deciding controversies at home, (4) the public policies of the fora, and (5) the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-80. The court evaluating a motion for transfer enjoys "substantial flexibility" in assigning the relative weight accorded to each factor. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 44 (3d Cir. 1988). No factor is dispositive. Rather, "each case turns on its facts." Id.; see also Lawrence v. Xerox Corp., 56 F. Supp.2d 442, 450 (D.N.J. 1999) ("A transfer analysis under Section 1404 is a flexible and individualized analysis which must be made on the unique facts presented in each case.").

Within the framework of the aforementioned private and public interest factors, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara, 55 F.3d at 880. "Although the parties' agreement as to the most proper forum [does] not receive dispositive weight, it is entitled to substantial consideration. Id. (citations omitted).

Before balancing the Jumara factors, we must determine whether the forum selection clause is valid. Federal law governs the evaluation of the forum selection clause in diversity cases. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 ("Because questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature, federal law applies in diversity cases irrespective of [Erie].") (internal quotation marks and citations omitted).[4]

---

[4] Ms. Veverka contends that because she raises state law claims, the action is unique to New Jersey law and should not be transferred to the District Court of the Southern District of Florida. However, it is settled jurisprudence that passenger ticket contracts for cruises are maritime contracts governed by federal admiralty law. See id.; see also Carnival Cruise Lines v. Shute, 499 U.S. 585, 590 (1991); Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983) ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation.").

First, the parties argue with some vigor as to whether the forum selection clause was reasonably communicated or hidden within the contract. Ms. Veverka maintains that because she lacks the original copy of the Ticket Contract, she cannot determine the reasonableness of the clause and therefore it cannot be enforced. She also argues, somewhat inconsistently, that she never received notice of the clause. However, Defendant argues that its records indicate that Ms. Veverka was sent the Ticket Contract, and as a matter of practice or policy, a passenger cannot embark on the vessel without accepting the terms of the Ticket Contract by signing the portion of the Ticket Acknowledgment Card and handing it to staff at the pier prior to boarding. To the extent that a factual issue may exist as to whether Ms. Veverka received the notice, it is not pertinent at this stage of review. Discovery in this case is ongoing and Ms. Veverka may raise the issue later if appropriate. As a legal matter, however, the clause is clearly displayed on the Ticket Contract: the first paragraph is emboldened and in all capital letters, cautions of limitations on the guest's right to sue, and directs the reader to Section 9, also in all capital letters, which clearly sets forth the forum selection clause. Compare Spataro v. Kloster Cruise Ltd. d/b/a Norwegian Cruise Line, 894 F.2d 44 (2d Cir. 1990) (per curium) (a three-inch by eight-inch passenger ticket communicating the limitations of the passenger's rights is reasonable).

The presumption of validity of a forum selection clause may be overcome if it is "shown by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). The Supreme Court has construed this exception narrowly: forum selection clauses are unreasonable (1) if the clause was procured through "fraud or overreaching," id. at 12-13; (2) if the forum is "*so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived his day in court*," id. at 15

10

(emphasis added); (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, Carnival Cruise Lines, Inc. v. Shute, infra, 499 U.S. 585, 596-97 (1991), or (4) if the clause contravenes a strong public policy of the forum state, The Bremen, 407 U.S. at 15. See also Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir. 1990) (relying on The Bremen factors). The challenger bears a "heavy burden" to establish the serious inconvenience of the contractual forum in determining the reasonableness of the forum clause. The Bremen, 407 U.S. at 1917.

The lynchpin issue here is the reasonableness of the forum selection clause, and specifically whether the forum is so gravely difficult and inconvenient that Ms. Veverka will be deprived of her day in court.

In the landmark case The Bremen, the Supreme Court determined that where German and American corporations negotiated an international commercial transaction to tow a rig from the Gulf of Mexico to the Adriatic Sea, and the contract included a forum selection clause for London, the clause was to be enforced and venue in London was proper, absent a showing of unreasonableness. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). The Supreme Court considered the record: the forum selection clause was of "overriding importance" to the contracted transaction. Additionally, the defendant's German towage contracts ordinarily provided for exclusive German jurisdiction and application of German law, but in an effort to meet the American corporation half way, the London forum was proposed and English law would apply. Id. at 13, n. 15. Further, in light of the commercial realities and expanding international trade, the Supreme Court concluded that the heavy burden of proof was not met to deem the clause unreasonable. Id. at 17-18.

The same conclusion was reached by the Supreme Court nearly twenty years later in Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991). In Shute, a Washington State couple embarked on a cruise between Los Angeles and Puerto Vallarta, Mexico. The ticket contract included a clause mandating forum in Miami, Florida. The Supreme Court found that the forum-selection clause was enforceable because the couple had not satisfied the heavy burden of proof required to set the clause aside on grounds of inconvenience.

First, Shute considered a cruise line's "special interest in limiting the fora in which it potentially could be subject to suit":

> Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. See *The Bremen*, 407 U.S., at 13, and n. 15; *Hodes*, 858 F. 2d, at 913. Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary [*594] effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. See *Stewart Organization*, 487 U.S., at 33 (concurring opinion). Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued. Cf. *Northwestern Nat. Ins. Co.* v. *Donovan*, 916 F. 2d 372, 378 (CA7 1990).

Id. at 593-94.

Second, the Supreme Court did not agree with a factual finding made by the Ninth Circuit Court of Appeals because "the District Court made no [such factual] finding regarding the physical and financial impediments to the Shutes' pursuing their case in Florida." Id. at 594.

12

Thus, the Supreme Court found that the appeals court's "conclusory reference to the record provides no basis for this Court to validate the finding of inconvenience." Id.

Ms. Veverka's circumstances are indeed distinct from those considered in The Bremen, between two international corporations, and Shute, where the district court made no determination of physical or financial impediments. Ms. Veverka is eight-one years of age, and experiences pain and discomfort and ongoing medical conditions which require assistance with basic daily activities. The vast majority of Ms. Veverka's substantive medical treatments took place in New Jersey, where her medical witnesses live and work. Indeed, Ms. Veverka was taken by a medical evacuation plane to Teterbero the first evening after her slip and fall, as soon as the ship docked in Bermuda. Then, she was immediately transferred to a New Jersey hospital for her hip replacement surgery. Her rehabilitation continued in New Jersey, as did subsequent treatment for related medical conditions in various facilities for stomach injections due to blood clots and separate treatment for chest pains. Ms. Veverka has met her heavy burden to establish the serious inconvenience of the contractual forum, such that for all practical purposes she would be deprived her day in court.

In consideration of the additional Section 1404(a) factors, Defendant has not met its burden to establish the need for transfer. New Jersey is not a forum foreign to Defendant. Indeed, the cruise ship boarded at Cape Liberty Cruise Port in the New York Harbor in Bayonne, New Jersey. Furthermore, defense counsel on the record is licensed in New Jersey and works in the Chrysler Building in Manhattan, just across the river. Thus, on balance, the New Jersey forum is more convenient to the parties.

Ms. Veverka and Defendant argue that because certain witnesses are based in New Jersey or Florida, the convenience of the witnesses would be better served in the respective forum

13

advocated.  Defendant does not elaborate on specific witnesses based in Florida, while Ms. Veverka's substantive medical treatment and related witnesses and records are in New Jersey, as described immediately above.  Thus, on balance, the New Jersey forum is more convenient to the witnesses.

Defendant argues in favor of the Florida forum because access to certain books and records are not in New Jersey.  However, the brief does not specify that such documents would be unavailable in New Jersey, nor does it reference specific voluminous and/or fixed books or records.  It withstands reason that, absent indication otherwise, in this day of age, any relevant books or records could be transferred electronically or in hard copy to New Jersey.  This issue does not outweigh the other factors considered here.

Given Ms. Veverka's senior age, medical condition, need for ongoing treatment and assistance, and Defendant's contacts and proximity in and near New Jersey, and associated expense and time necessary for litigation, the balance of factors and the interests of justice clearly weigh in favor of New Jersey as the proper forum here.  Again, although the forum selection clause is to be given substantial consideration, it is non-dispositive and is to be weighed with the other public and private factors.

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motions for transfer and dismissal pursuant to 28 USC § 1404(a) and Rule 12(b) (6) respectively.  The Court will enter an order implementing this opinion.

**/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

December 11, 2012

14