<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE VEVERKA,<br><br>Plaintiff,<br><br>v.<br><br>ROYAL CARIBBEAN CRUISES, LTD.,<br><br>Defendant. | Civil Action No. 12-3070 (ES) (MAH)<br><br>OPINION |

S<small>ALAS,</small> D<small>ISTRICT</small> J<small>UDGE</small>

## I. Introduction

This action arises from injuries sustained by Plaintiff Jacqueline Veverka ("Plaintiff" or "Ms. Veverka") during an ocean cruise operated by Royal Caribbean Cruises Ltd. ("RCCL"). Pending before the Court is RCCL's motion for summary judgment. (D.E. No. 57). The Court has considered the submissions accompanying the instant motion and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is GRANTED and Plaintiff's complaint is dismissed in its entirety.

## II. Background[1]

---

[1] These background facts are taken in part from the parties' statements of undisputed material facts. (D.E. No. 57-1, Defendant's Rule 56 Statement of Facts ("Def. SMF"); D.E. No. 59-4, Plaintiff's Statement of Facts IAW Local R.56.1 ("Pl. SMF")). Plaintiff also properly filed a supplemental statement of disputed facts with her opposition papers, (D.E. No. 59-4, Plaintiff's Supplemental Statement of Disputed Facts ("Pl. SSDF")). RCCL did not dispute these facts in its reply papers, and the Court shall deem them undisputed for purposes of this motion. L.Civ.R. 56.1 ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."). However, the Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, 10 (D.N.J. Nov. 10, 2005); *see also* L.Civ.R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

Octogenarian Plaintiff Jacqueline Veverka was a passenger on RCCL's cruise ship, Explorer of the Sea (the "Vessel"), which departed from the cruise port in Bayonne, New Jersey on May 22, 2010, for a five night cruise to Bermuda. (Def. SMF ¶ 1; Pl. SMF ¶ 1; Pl. SSDF ¶ 1). On the afternoon of May 23, 2010, while walking on the Vessel's deck, Plaintiff slipped on liquid left by RCCL's employees and broke her hip. (Def. SMF ¶ 6; Pl. SSDF ¶¶ 4, 8). Plaintiff was flown back to New Jersey and underwent hip replacement surgery on May 26, 2010. (Pl. SSDF ¶¶ 9, 10). Plaintiff additionally suffered from a blood clot and chest pains associated with the hip replacement. (Pl. SSDF ¶¶ 12, 14). Plaintiff underwent various forms of treatment for her ailments and continues to experience pain and discomfort, as well stress, anxiety, and loss of enjoyment of life. (Pl. SSDF ¶¶ 11, 13, 15, 16).

RCCL's records indicate that Ms. Veverka booked her cruise aboard the Vessel on March 27, 2010, but it was in fact booked by Ms. Veverka's daughter. (Def. SMF ¶ 2; Pl. SMF ¶ 2; Pl. SSDF ¶ 2). According to RCCL, it sent Ms. Veverka the Ticket Contract that is sent to each guest who books a cruise, which RCCL argues governs the contractual relationship between RCCL and Ms. Veverka. (Def. SMF ¶ 2, 3). Ms. Veverka asserts that she did not receive a Ticket Contract, and disputes that it governs the relationship between the parties. (Pl. SMF ¶¶ 2–5; Pl. SSDF ¶ 3).

The following language, printed in bold capital letters on the first page of the Ticket Contract, alerts the passenger to the terms of the Ticket Contract and specifically advises the passenger to pay particular attention to sections 3, 9, 10, and 11 of the Ticket Contract, which limit liability and the right to sue:

> **<u>IMPORTANT NOTICE TO GUESTS</u>**
> **YOUR CRUISE/CRUISE TOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND**

**SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR THE FUTURE.**

(*See* D.E. No. 6-2, Affidavit of David Banciella, Ex. A ("Ticket Contract") at 1). Section 10 of the Ticket Contract contains the "Notice of Claims and Commencement of Suit" clause, which states as follows:

> a. TIME LIMITS FOR PERSONAL INJURY/ILLNESS/DEATH CLAIMS: NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER, THE VESSEL OR THE TRANSPORT FOR PERSONAL INJURY, ILLNESS OR DEATH OF ANY PASSENGER UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN SIX (6) MONTHS FROM THE DATE OF THE INJURY, ILLNESS OR DEATH AND SUIT IS COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DATE OF SUCH INJURY, ILLNESS OR DEATH AND PROCESS SERVED WITHIN 120 DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.

(*Id.* at 4). The second paragraph of Section 1 of the Ticket Contract, INTRODUCTION, contains the following notice:

> Purchase or use of this Ticket Contract, whether or not signed by the Passenger, shall constitute the agreement by Passenger, on behalf of himself and all other persons traveling under this Ticket Contract (including any accompanying minors or other persons for whom the Ticket Contract was purchased), to be bound by the terms and conditions of this Ticket Contract. This Ticket Contract cannot be modified except in a writing signed by a corporate officer of Operator. In addition, Guest acknowledges the availability of and Guest agrees to abide by the terms and conditions, including but not limited to certain payment terms such as minimum deposit requirements and payment due dates, which appear in the applicable Carrier brochure or online at www.RoyalCaribbean.com. In the event of any conflict between such other brochure or website materials and this Ticket Contract, the terms of this Ticket Contract shall prevail.

(*Id.* at 1). The Ticket Contract is also available on RCCL's website, where it can be accessed and printed by any person. (D.E. No. 57-1, Affidavit of David Banciella ("Banciella Aff.") ¶ 7). A passenger cannot embark upon an RCCL vessel without accepting the terms of the Ticket Contract. (*Id.* ¶ 8).

3

This action was commenced on May 22, 2012, two years after the date on which Plaintiff sustained injury. (Def. SMF ¶ 7; Pl. SMF ¶ 7). Plaintiff's original complaint contained two causes of action: negligence and breach of contract. (D.E. No. 1, Complaint ("Compl.") at 4–5). Plaintiff filed an amended complaint on June 28, 2012, prior to a response from RCCL. (D.E. No. 5, Amended Complaint ("Am. Compl.")). The amended complaint retained the causes of action for negligence (count one) and breach of contract (count two), and added additional claims of: violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1(D) (count three); breach of good faith and fair dealing (count four); and tortious interference with her contractual relationship with Medicare, for reimbursement for medical expenses incurred pursuant to the Medicare, Medicaid, and SCHIP Extension Act (MMSEA) of 2007 (count five). (*Id.* at 5–8).

RCCL filed a motion to transfer the case to the U.S. District Court for the Southern District of Florida on July 3, 2012, (D.E. No. 6), before filing an answer to the amended complaint on July 12, 2012, (D.E. No. 7). The motion to transfer was transferred to Judge Debevoise on October 25, 2012, and he denied the motion on December 11, 2012, (D.E. No. 23); thereafter the case proceeded through discovery. RCCL filed its motion for summary judgment on June 13, 2014. (*See* D.E. No. 57-2, Defendant Royal Caribbean Cruises Ltd.'s Memorandum of Law in Support of Its Motion for Summary Judgment ("Def. Mov. Br.")). Plaintiff filed opposition papers on July 7, 2014, (D.E. No. 59, Plaintiff Jacqueline Veverka's Brief in Opposition ("Pl. Opp. Br.")), and RCCL replied on July 14, 2014, (D.E. No. 60, Defendant Royal Caribbean Cruises Ltd.'s Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment ("Def. Reply Br.")). RCCL's motion for summary judgment is now ripe for adjudication.

### III.     Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and if, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to a judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when a reasonable finder of fact could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012).

The moving party must first show that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. If the movant meets this burden, the burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. Although the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party, *see Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995), the non-moving party must offer specific facts that establish a genuine issue of material fact—not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings, or unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Celotex,* 477 U.S. at 324; *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003).

## IV. Discussion

### A. Compliance with Local Civil Rule 56.1

Plaintiff argues that summary judgment should be denied because of RCCL's failure to fully comply with Local Civil Rule 56.1, which requires separately numbered paragraphs citing to the record. (Pl. Opp. Br at 2–4). RCCL's 56.1 statement properly consists of seven separately numbered paragraphs, but paragraphs 1, 4–7 have no citation, and Plaintiff contends that the citation to the Affidavit of David Banciella for paragraphs 2 and 3 is in violation of Federal Rule of Civil Procedure 37(c)(1) and must be stricken. The Court, however, declines to deny summary judgment on these grounds.

First, the Court finds that the citation to the Affidavit of Mr. Banciella is not in violation of Federal Rule of Civil Procedure 37(c)(1), which provides in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Even if Mr. Banciella arguably should have been listed as part of the Rule 26(a) initial disclosures, Rule 26(e) requires supplementation or correction only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Here, Mr. Banciella submitted a nearly-identical affidavit in connection with RCCL's July 2012 motion to transfer venue, (*see* D.E. No. 6-2), which was referred to in Judge Debevoise's corresponding opinion, (*see* D.E. No. 23 at 3). Thus, the Court finds that Mr. Banciella was clearly "made known" to Plaintiff within the meaning of Rule 26 and that Rule 37(c)(1) therefore does not apply.

Second, despite the lack of citations to the record, the Court finds that RCCL's submission "meets the principle embodied by the rule—that the parties narrow the key issues so the Court can adjudicate the motion without embarking on a judicial scavenger hunt for relevant facts." *Schecter v. Schecter*, 2008 U.S. Dist. LEXIS 97518, *20 (D.N.J. Nov. 26, 2008). RCCL argues that the key issue here is the validity of the limitations clause contained within the ticket, and these facts are readily apparent to the Court. Furthermore, Plaintiff agrees with three of the seven paragraphs in RCCL's 56.1 statement, and denies all four of the remaining paragraphs on the same grounds: that she did not receive the Ticket Contract. (*See* Pl. SMF). Thus, the Court is satisfied that RCCL's substantial compliance with L.Civ.R. 56.1 has sufficiently narrowed the issues and that the Court is able to adjudicate the motion without the need for a factual scavenger hunt. Therefore, the Court will not exercise its discretion to deny summary judgment for failure to precisely abide by Local Civil Rule 56.1, but advises counsel to ensure compliance with all local rules when practicing in our district.

### B. One Year Limit on Personal Injury Suits

#### 1. Validity of the Limitations Clauses

The primary issue the Court must address is the validity of section 10a of the Ticket Contract, which requires that lawsuits for personal injury be commenced within one year from the date of injury. (Banciella Aff. ¶ 5). It is "well-established that evaluating time limits on notice and filing of a passenger's lawsuit constitutes a legal determination, suitable for disposition by summary judgment." *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 244–45 (3d Cir. 1987), *cert. denied*, 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987) (internal quotation marks and citation omitted). Clear precedent requires that the Court find the clause valid.

According to RCCL's records, it sent Ms. Veverka the Ticket Contract that is sent to each passenger, or "guest" who books a cruise. (Banciella Aff. ¶ 3). Furthermore, RCCL asserts that a passenger cannot embark upon an RCCL vessel without accepting the terms of the Ticket Contract: "Prior to embarkation, each passenger is required to sign the portion of her Ticket Acknowledgment Card in the space provided. The passenger hands this document to the embarkation staff at the pier prior to boarding the vessel." (*Id.* ¶ 8).

The crux of Plaintiff's opposition to the present motion is that she either did not receive the Ticket Contract, but that even if she did, RCCL's failure to produce the original ticket (as opposed to a sample) means that the limitations clauses are unenforceable. (*See* Pl. Opp. Br. at 6–8). Plaintiff contends that RCCL has "created a fiction based on the unauthenticated 'sample ticket' it is attempting to attribute to Plaintiff" and argues that the Ticket Contract is a contract of adhesion and procedurally and substantively unconscionable, and therefore unenforceable. (*Id.* at 7–8).

"As an initial matter, it is well settled that the general maritime law of the United States, and not state law, controls the issue of whether a passenger is bound to terms set forth in a cruise ship's ticket and contract of passage." *Schenck v. Kloster Cruise Ltd.*, 800 F.Supp. 120, 122 (D.N.J.1992), *aff'd*, 993 F.2d 225 (3d Cir.1993). Plaintiff's adhesion argument is therefore misplaced, since Plaintiff has not demonstrated that adhesion is a valid cause of action under maritime law.

Furthermore, Congress has permitted shipowners to stipulate, in any contract for passage, a time limitation for filing suit against the shipowner for personal injury or death, so long as the limitation period is not less than one year. *See* 46 U.S.C. § 30508(b)(2). In the Third Circuit, a limitations clause in a cruise ship passenger ticket is valid and enforceable as long as the clause at

issue "reasonably communicates" the limitations period to the passenger. *Marek*, 817 F.2d at 245. Thus, as long as a passenger ticket reasonably communicates to the passenger the restrictions on his or her rights, a one year contractual limitation will be enforced. *Schenck*, 800 F. Supp. at 122–23.

In determining whether a contractual limitation was "reasonably communicated," it is necessary that a court examine (1) the "warning language" usually found on the front cover of a cruise ticket, which directs passengers to read the particular terms of the ticket and (2) "the ticket terms themselves [and] physical characteristics [such] as the location of the terms within the ticket, the size of the typeface in which they are printed, and the simplicity of the language they employ." *See Marek*, 817 F.2d at 245.

Judge Debevoise already found that the contractual limitations contained within the Ticket Contract were reasonably communicated while ruling specifically on the forum selection clause:

> As a legal matter, however, the clause is clearly displayed on the Ticket Contract: the first paragraph is emboldened and in all capital letters, cautions of limitations on the guest's right to sue, and directs the reader to Section 9, also in all capital letters, which clearly sets forth the forum selection clause. Compare S*pataro v. Kloster Cruise Ltd. d/b/a Norwegian Cruise Line*, 894 F.2d 44 (2d Cir. 1990) (per curium) (a three-inch by eight-inch passenger ticket communicating the limitations of the passenger's rights is reasonable).

(D.E. No. 23, Opinion at 10). The undersigned agrees with Judge Debevoise's conclusion with respect to the time limitation clause. The "warning language" is the same, and Section 10a—like Section 9—is in capital letters and clearly sets forth the time limitations.

Moreover, whether Plaintiff received a Ticket Contract is not a genuine issue of material fact because the Ticket Contract was available to her. First, it is insignificant that the cruise was booked by Plaintiff's daughter and not Plaintiff directly. *Ciliberto v. Carnival Cruise Lines, Inc.*, 1986 AMC 2317 (E.D. Pa. 1986) (in granting summary judgment to cruise operator, the court held

9

that a passenger is bound by the clearly indicated one-year limitation provision contained in passage contract, despite the fact that she did not see the ticket, which was obtained by travelling companion on her behalf). Second, even if Plaintiff never received a Ticket Contract prior to boarding, this does not determine whether or not the Ticket Contract was "reasonably communicative": "even if plaintiffs did not read the terms of the contract prior to the trip, they should have read it following the injury." *Siegel v. Norwegian Cruise Line*, No. 00-cv-6271, 2001 WL 1905983, at *3 (D.N.J. May 14, 2001). *See also Ames v. Celebrity Cruises, Inc.*, No. 97-cv-0065, 1998 WL 427694, at *5 (S.D.N.Y. July 29, 1998) (once injury occurred, plaintiff had a "duty at that time to consult their tickets or to contact [the cruise operator] in order to learn of any limitations affecting their right to sue"); *Palmer v. Norwegian Cruise Line & Norwegian Spirit*, 741 F. Supp. 2d 405, 413 (E.D.N.Y. 2010) ("[T]he Second Circuit does not require that a passenger personally possess, read, see, or purchase a ship ticket for its terms to be enforceable, as long as the ticket was generally available to the passenger for a reasonable period of time both before and after embarkation.").

In sum, as long as the warnings and limitations are clear, and the passenger has an opportunity to meaningfully educate themselves about the terms of a cruise ticket contract both before and after embarkation, the terms will be enforced. *See Siegel*, 2001 WL 1905983, at *3. That is the case here. Putting aside the fact that Plaintiff could not have boarded the Vessel without signing the Ticket Contract, (Banciella Aff. ¶ 8), even if Plaintiff did not receive the Ticket Contract, it was available online,[2] (*id.*), and she could have read it following her injury. Plaintiff

---

[2] *See* Ticket Contract, *available at* http://media.royalcaribbean.com/content/en_US/pdf/RoyalCaribbean_Cruise_Ticket_Contract_013114.pdf. This also undermines Plaintiff's argument that the terms of the Ticket Contract should not be enforced because RCCL is unable to provide the original ticket signed by Plaintiff. RCCL sends the same Ticket Contract to all guests, (Banciella Aff. ¶ 3), and so the Court finds that the sample ticket provided is sufficient. In other words, the Court is not convinced that failure to provide the original ticket creates a genuine issue of material fact.

has not offered any persuasive reason why she was unable to educate herself as to the terms of the Ticket Contract following her injury. Therefore, like Judge Debevoise, the Court finds that the Ticket Contract at issue is "reasonably communicative," that the limitations clauses are valid, and that Plaintiff is bound by them.

2. Application of the Limitations Clauses to the Negligence (Count One) and Breach of Contract (Count Two) Claims[3]

Having determined that the limitations clause contained in the Ticket Contract is valid and applicable to Plaintiff, the Court must dismiss the negligence and breach of contract claims as a matter of law.

Plaintiff's negligence and breach of contract claims are explicitly premised on personal injuries she sustained as a result of her fall. (*See* Am. Compl. ¶ 22 ("Plaintiff suffered severe injuries to her person as a result of this fall due to the negligence of the defendant."); *id.* ¶¶ 25 & 26 ("Defendant breached [the] contract by failing to provide plaintiff with safe travel on their ship in accordance with the terms of the contract. Plaintiff suffered severe injuries to her person as a result . . . .")).

Section 10a of the Ticket Contract clearly states that suits for personal injury must be commenced within one year of the date of injury. (Ticket Contract at 4). This action was commenced on May 22, 2012, two years after the date on which Plaintiff sustained injury. (D.E.

---

[3] The Court finds that the breach of contract claim is ripe for adjudication, despite Plaintiff's argument to the contrary. (Pl. Opp. Br. at 13–14). Even though RCCL's moving brief does not specifically address breach of contract, RCCL's Notice of Motion explicitly states that it is seeking "summary judgment dismissing Plaintiff's Amended Complaint," without any limitations. (*See* D.E. No. 57 at 1). Thus, Plaintiff had sufficient notice that RCCL was seeking dismissal of the breach of contract claim and has not provided any other rationale for why the Court should withhold judgment. In any event, the Court would be authorized in ruling on this claim *sua sponte*. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."); *see also Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004) ("[T]here are three different grounds on which we could recognize an exception to the notice requirement in the case of *sua sponte* summary judgment—the presence of a fully developed record, the lack of prejudice, or a decision based on a purely legal issue . . . ."). Therefore, the Court may properly rule on this claim.

No. 1; Def. SMF ¶ 7; Pl. SMF ¶ 7). These claims are therefore barred by the limitations clause and RCCL is entitled to judgment as a matter of law.

### C. Violations of the New Jersey Consumer Fraud Act (Count Three)

Plaintiff argues that RCCL engaged in unlawful conduct in violation of the New Jersey Consumer Fraud Act ("NJCFA"). The Court grants summary judgment to RCCL on this count because even when construing the facts in the light most favorable to Plaintiff, there is not sufficient evidence from which a trier of fact could reasonably conclude that RCCL engaged in unlawful conduct in violation of the NJCFA. *See Pa. Coal Ass'n*, 63 F.3d at 236; *Celotex,* 477 U.S. at 324.

"The Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace. . . . The CFA is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud, and therefore to be liberally construed in favor of the consumer." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) (internal citations and quotations omitted). A claim pursuant to the NJCFA requires three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the loss. *See Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005).

The NJCFA defines "unlawful practice" as:

any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate or with the subsequent performance of such person as aforesaid . . . .

*N.J.S.A.* 56:8-2. Stated another way, "[u]nlawful conduct under the Act falls into three general categories: affirmative acts and knowing omissions, and violations of regulations promulgated

under the Act." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (internal citations omitted). "The capacity to mislead is the prime ingredient of all types of consumer fraud. Mere customer dissatisfaction does not constitute consumer fraud." *In re Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998) (internal citations and quotations omitted). An affirmative misrepresentation "has to be one which is material to the transaction . . . [and] made to induce the buyer to make the purchase." *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (N.J. Super. Ct. App. Div. 2004) (citing *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 607 (1997)). Similarly, "[t]o prove that . . . acts of omission constitute[] consumer fraud, [a] plaintiff must show that the defendant intentionally concealed the information . . . with the intention that plaintiff would rely on the concealment, and that the information was material to the transaction." *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 426, 815 A.2d 537, 542 (App. Div. 2003) (citation omitted).

The Complaint's allegations regarding the CFA claim are unclear. Plaintiff's Complaint alleges the following: "Plaintiff verified the business value was misrepresented by [RCCL], [RCCL] failed to make good on its agreement. . . . [RCCL] made misrepresentations to Plaintiff as to the transaction, goods, offers and value and as a result of the misrepresentations, plaintiff [sic] was induced to enter into the agreements for business and personal reasons." (Am. Compl. ¶¶ 28, 31). Plaintiff's Opposition Brief clarifies that RCCL "engaged in unlawful conduct and unconscionable practices by [1] failing to provide a safe environment to cruise passengers, [2] failing to reimburse her for cruise expenses despite her inability to complete the cruise, and [3] failing to provide adequate medical care and reimburse her for medical expenses for which [RCCL] forced her to accrue." (Pl. Opp. Br. at 9).

RCCL counters that Plaintiff has "failed to identify any misrepresentation made by RCCL nor has she identified the agreement she was supposedly induced to enter into by reason of fraud." (Def. Mov. Br. at 19).  RCCL argues that "Plaintiff did not point to any evidence in the record of any misrepresentation, unlawful practice, false pretense, false promise or any other actionable conduct alleged to have been perpetrated by the RCCL."  (Def. Reply Br. at 7).

The Court addresses each of Plaintiff's arguments in turn[4] and ultimately determines that Plaintiff has failed to set forth sufficient evidence of unlawful conduct on the part of RCCL and that RCCL is entitled to summary judgment.

First, there is no evidence that RCCL engaged in unlawful conduct by failing to maintain a safe environment on the ship.  To argue that a genuine issue of material fact exists, Plaintiff cites to two portions of the testimony of Mr. Vicky Padvalkar (the first individual on the scene after the fall): the condition of the deck at the time of the fall, and the reported cause of the fall.

With respect to the condition of the deck, Plaintiff argues that Mr. Padvalkar "claimed there was no water in the area, yet he placed wet floor signs in the area and squeegeed the the [sic] area to take out the water where Ms. Veverka fell." (Pl. Opp. Br. at 11) (internal citations to the record omitted).  However, Plaintiff misreads Mr. Padvalkar's testimony and confuses the timeline of events. (*See generally* D.E. No. 59-11, Ex. F ("Padvalkar Dep.")).  Mr. Padvalkar testified that there was no water in the area where Plaintiff fell, (*id.* at 11:19–22), that there was no water there because he had squeegeed it out about ten minutes prior to the fall, (*id.* at 11:23–12:10), and that there were "wet-floor caution signs" in the area where Plaintiff fell, (*id.* at 19:2–24).  (In other words, according to Mr. Padvalkar, he squeegeed water out of the area, placed a "caution wet-floor

---

[4] As an initial matter, Plaintiff has not identified which "agreements" she entered into as a result of RCCL's misrepresentations. (See Am. Compl. ¶¶ 28, 31). Since the Ticket Contract is the only agreement the Court can locate in the record, it assumes that this is the "agreements" to which Plaintiff refers.

sign" nearby, and Plaintiff slipped and fell about ten minutes later.)  The dispute over the condition of the premises at the time of Plaintiff's fall could certainly present a genuine issue of material fact for a negligence claim, but is not enough in the context of the NJCFA because Plaintiff cannot show that the actions of RCCL *at the time of the accident* were material to the decision to purchase the cruise ticket and ultimately embark on the Vessel.  (*See* Am. Compl. ¶ 31 ("[RCCL] made misrepresentations to Plaintiff as to the transaction, goods, offers and value and as a result of the misrepresentations, plaintiff [sic] was induced to enter into the agreements for business and personal reasons."); s*ee also Castro*, 370 N.J. Super. at 294 (affirmative misrepresentation must be "material to the transaction . . . [and] made to induce the buyer to make the purchase"); *Blackfin Yacht Corp.*, 357 N.J. Super. at 426 (omission requires proof of intentional concealment of material information, "with the intention that plaintiff would rely on the concealment").

Additionally, Plaintiff argues that unlawful conduct can be evinced from Mr. Padvalkar's report in which he concluded Plaintiff fell "because she was wearing flip-flops," despite the fact that flip flops are not prohibited on the Vessel.  (Pl. Opp. Br. at 11).  It is entirely unclear to the Court how Mr. Padvalkar's opinion regarding the cause of the fall shows unlawful conduct within the meaning of the NJCFA on the part of RCCL.  Again, even if the Court were to construe Mr. Padvalkar's conclusion that Plaintiff slipped "because she was wearing flip-flops" as an affirmative misrepresentation or a knowing omission, Plaintiff cannot show that the actions of RCCL *at the time of the accident* were material to the decision to purchase the cruise ticket and ultimately embark on the Vessel.  *See Castro*, 370 N.J. Super. at 294; *Blackfin Yacht Corp.*, 357 N.J. Super. At 426.

In short, Plaintiff has not provided sufficient evidence to raise a genuine issue of material fact as to whether RCCL acted in violation of the NJCFA in maintaining a safe environment on

the ship. Even construing the record in the light most favorable to Plaintiff, no reasonable trier of fact could conclude that the evidence in the record shows that RCCL engaged in any sort of "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact" with respect to providing a safe environment. *N.J.S.A.* 56:8-2. Indeed, Plaintiff has not provided—and the Court could not locate—a single case where a plaintiff successfully relied on the NJCFA in the context of an action that ultimately sounds in negligence and premises liability.

Second, Plaintiff's claim that failure to provide reimbursement for cruise expenses is unlawful conduct within the meaning of the NJCFA is entirely undermined by the evidence in the record. Plaintiff claims that RCCL "has committed an unconscionable commercial practice, deception, fraud, falsity, or misrepresentation by forcibly disembarking Plaintiff without compensation or refund." (Pl. Opp. Br. at 10). However, Section 7 of the Ticket Contract clearly indicates that Plaintiff is not entitled to a refund: "[E]arly disembarkation of the Passenger for any reason . . . shall be without refund, compensation, or liability on the part of the Carrier whatsoever." (Ticket Contract at 8). Indeed, this clause is consistent with the testimony of Ms. Campos: "I guess typically if [a passenger] cannot complete their cruise, they will not get their ticket fare back." (Pl. Opp. Br. at 12). Therefore, Plaintiff has not raised a genuine issue of material fact with respect to reimbursement. In light of Section 7, no reasonable trier of fact could conclude that RCCL engaged in unlawful conduct in not reimbursing Plaintiff's cruise expenses.

Third, Plaintiff has not pointed to any evidence to show that RCCL engaged in unlawful conduct in providing medical treatment to Plaintiff or by failing to reimburse her for medical expenses. Plaintiff slipped and fell on May 23, 2010, and was kept overnight in the medical unit of the cruise ship. (Pl. SSDF ¶¶ 4, 6). When the ship docked in Bermuda the next day, Plaintiff

was "forcibly disembarked," (Pl. Opp. Br. at 11), transported to King Edward Hospital, and eventually flown back to New Jersey. (Pl. SSDF ¶¶ 7, 9). Plaintiff does not provide any evidence whatsoever to show that RCCL engaged in "unlawful conduct" in providing allegedly inadequate medical care. Furthermore, as detailed more fully in Part IV.E, *infra*, Plaintiff has not provided any evidence to show that RCCL engaged in unlawful conduct in failing to reimburse Plaintiff for her medical expenses. Therefore, Plaintiff has not raised a genuine issue of material fact sufficient to overcome summary judgment.

Construing the facts in the light most favorable to Plaintiff, the Court determines that there is not sufficient evidence from which a trier of fact could reasonably conclude that RCCL engaged in unlawful conduct in violation of the NJCFA. *See Pa. Coal Ass'n*, 63 F.3d at 236; *Celotex,* 477 U.S. at 324. RCCL is therefore entitled to summary judgment on the NJCFA claims.

### D.  Breach of Good Faith and Fair Dealing (Count Four)

Plaintiff rehashes the NJCFA claims under the banner of "breach of good faith" but likewise fails to raise a genuine issue of material fact sufficient to overcome summary judgment.

"Every party to a contract, including one with an option provision, is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 224 (2005). "Proof of 'bad motive or intention' is vital to an action for breach of the covenant. *Id.* at 225; *see also Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) (requiring that a party have acted "with the objective of preventing the other party from receiving its reasonably expected fruits under the contract" to establish a breach of the implied covenant). A plaintiff must "set out sufficient evidence of bad intention—*i.e.*, to demonstrate an issue of material fact—in order to survive a

motion for summary judgment." *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 421 (3d Cir. 2013)

The Complaint states that "Plaintiff had an expectation that [RCCL] would provide goods and services of value in exchange for [RCCL] receiving money. Plaintiff had an expectation that the goods and services would be delivered and enjoyed. [RCCL] acted in bad faith. Their actions were wanton, willful and without privilege or right." (Am. Compl. ¶¶ 36 & 37). Plaintiff clarifies that this claim—just like the claim under the NJCFA—is premised on "[1] failing to provide a safe environment to cruise passengers, [2] failing to reimburse [Plaintiff] for cruise expenses despite her inability to complete the cruise, and [3] failing to provide adequate medical care and reimburse her for medical expenses for which Defendant forced her to accrue." (Pl. Opp. Br. at 11).

Because the claims for bad faith are identical to those asserted under the NJCFA, the Court relies on its analysis in Part IV.C, *supra*, to show how Plaintiff has failed to set forth sufficient evidence to raise a genuine issue of material fact regarding RCCL's failure to provide a safe environment to cruise passengers, reimburse Plaintiff for cruise expenses, and provide adequate medical care and reimbursement for medical expenses.

First, as with the NJCFA claim, there is no evidence that RCCL acted in bad faith in maintaining a safe environment on the ship. The Court adds that when analyzing the evidence in the record, Plaintiff's claim that RCCL acted in bad faith in maintaining safe premises on the cruise ship clearly speaks to negligence, not bad faith. *See Sonders v. PNC Bank, N.A.*, No. CIV.A. 01-3083, 2003 WL 22310102, at *12 (E.D. Pa. June 3, 2003) ("[M]ere negligence is insufficient to amount to bad faith."). Second, as outlined above, even if Plaintiff believed that she would be entitled to reimbursement if she was unable to complete the cruise, this claim is undermined by the evidence in the record. Third, as detailed in Part IV. C, Plaintiff has not pointed to any evidence

18

to show that her medical treatment was inadequate or that RCCL is required to reimburse her for expenses.

As with the same allegations under the NJCFA, construing the facts in the light most favorable to Plaintiff, the Court determines that there is not sufficient evidence from which a trier of fact could reasonably conclude that RCCL acted in bad faith. *See Pa. Coal Ass'n*, 63 F.3d at 236; *Celotex,* 477 U.S. at 324. RCCL is therefore entitled to summary judgment on the bad faith claims.

### E. Tortious Interference with Contract (Count Five)

Plaintiff contends that RCCL "is tortuously interfering with Plaintiff's contractual relationship with Medicare." (Am. Compl. ¶ 43). However, because there is no evidence which suggests that RCCL had "specific knowledge" of this contractual relationship, RCCL is entitled to summary judgment.

In *Printing Mart-Morristown v. Sharp Elecs.*, 116 N.J. 739, 563 A.2d 31 (1989), the New Jersey Supreme Court detailed the elements of a claim for tortious interference with contractual relations: (1) the existence of the contract; (2) interference which was intentional and with malice (*i.e.*, without justification or excuse); (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages. *Id.* at 751–52. As a threshold matter, "a plaintiff must show that defendant had knowledge of the existing contract. General knowledge of a business relationship is not sufficient; the defendant must have specific knowledge of the contract right upon which his actions infringe." *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 564 (D.N.J. 2002).

Plaintiff does not allege in her Complaint, nor does she point to any evidence in the record, that shows that RCCL had "specific knowledge" of the agreement between Plaintiff and Medicare.

Because Plaintiff has failed to show RCCL's specific knowledge, RCCL is entitled to summary judgment on this claim. *See DiGiorgio Corp*, 230 F. Supp. 2d at 564 (D.N.J. 2002).

## V.     Conclusion

For these reasons, the Court GRANTS Defendants' motion for summary judgment. An accompanying Order follows this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
